

# NUMBER 13-07-467-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHNNY WYATT,                                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                                            Appellee.

On appeal from the 156th District Court of Bee County, Texas.

# MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion On Rehearing by Justice Benavides**

On August 14, 2008, we issued an opinion in this case. We grant appellant's motion for rehearing, withdraw our original opinion and judgment, and substitute the following opinion and judgment in its place. Inmate Johnny Wyatt allegedly threw urine on Correctional Officer Guadalupe Martinez and was charged with harassment of a public

servant.[1]  *See* TEX. PENAL CODE ANN. § 22.11(a) (Vernon 2003).  After a jury trial, Wyatt was convicted and received twenty years incarceration in the Texas Department of Corrections–Institutional Division, and a $10,000 fine.[2]  Wyatt appeals, challenging the legal and factual sufficiency of the evidence supporting his conviction.  We affirm.

## I. BACKGROUND

On May 26, 2005, Correctional Officers Guadalupe Martinez and Teresa Chavarria were on duty at the McConnell Unit of the Texas Department of Criminal Justice in Beeville, Texas.  Officers Martinez and Chavarria were conducting rounds to see which inmates wanted to go to recreation.  They approached cell 62, which housed Wyatt, and asked him if he would like to go to recreation.  Wyatt answered, "Yes," and the officers told him to step back against his bunk so they could perform the customary security procedures.  The officers then told him to strip down so they could check for weapons and other prohibited materials, which was standard procedure.

Wyatt handed his inmate fatigues to Officer Martinez, and during the customary inmate search of the clothes, no contraband was found.  Wyatt then put his clothes on and approached the food tray slot as instructed.  Officer Martinez ordered Wyatt to place his hands through the food tray slot so that he could be handcuffed.  If inmates are

---

[1] On rehearing, Wyatt pointed out that our original opinion addressed the current version of Texas Penal Code section 22.11(a), which requires that the actor commit the offense with the "intent to assault, harass, or alarm." TEX. PENAL CODE ANN. § 22.11 (Vernon 2005). Wyatt's alleged conduct occurred on May 26, 2005. Thus, the prior version of section 22.11, which required the intent to "harass, annoy, or alarm," applies to this case. *See* Act of May 28, 2003, 78th Leg., R.S., ch. 1006, § 1, 2003 TEX. SESS. LAW SERV. 2948, *amended by* Act of May 20, 2005, 79th Leg., ch. 543, § 1, 1005 TEX. SESS. LAW SERV. 1468. For ease of reference, we will cite to Texas Penal Code section 22.11, but throughout, we are referring to the prior version.

[2] Wyatt's sentence was increased from a third degree felony, punishable by a two-to-ten year sentence and a $10,000 maximum fine to a second degree felony, punishable by a twenty-year maximum sentence and $10,000 maximum fine. *See* TEX. PENAL CODE ANN. § 12.42(a)(3) (Vernon 2006).

Administration Segment (high risk) inmates, they are required to be handcuffed any time they come out of their cell. Just as handcuffs were about to be administered, Wyatt strayed from standard procedure.

According to the officers, Wyatt retracted his hands, knelt, and picked up a Styrofoam cup full of a liquid substance. Wyatt then extended his arm back out the food tray slot and threw the substance, which hit Officer Martinez on his pant leg. Officers Martinez and Chavarria then left the scene of the incident, and they told the picket officer to contact the superior officer. Officer Martinez stated he was fearful of all the diseases that are spread throughout the prison. Officer Martinez also testified that he "was alarmed [by] just the fact [of having urine thrown on himself] . . . ."

Officer Martinez was then relieved by another officer and sought medical attention. Officer Martinez testified that he wrote a statement outlining the incident, in which he indicated he had been hit by "feces." Cell 61's food tray was secure and shut, leading to a conclusion that cell 62 was the only plausible source of the urine throwing. However, no cup was ever retrieved from cell 62 or from the pipe chase, a type of plug that allows an officer or employee of the prison to open up the toilet system and retrieve an item that was flushed down the toilet.

At trial, Officer Martinez testified that he and Wyatt had no previous substantial conversation, nor had Wyatt ever shown any hostility towards him. Both Officers Martinez and Chavarria identified Wyatt as the assailant. Officer Martinez clearly saw an arm come out of the tray slot and throw a substance on him, and Officer Chavarria testified to the same thing.

Susan Poole, a criminal investigator with the Inspector General's Office, testified

3

that the substance did not contain "feces." Rather, the stain on Officer Martinez's pants contained urea, a component of urine. Texas Department of Public Safety chemist, Lori McElhaney, testified that, in her scientific opinion, the substance was urine.

The defense theorized that Officer Martinez urinated on himself, or that he used lotion, which contains urea, and then made contact with his pants leg. McElhaney testified that the pants did have a distinct urine smell. No genetic analysis was done to conclude whose urine was actually on the pants.

## II. Standard of Review

Wyatt argues the evidence is legally and factually insufficient to show that he had the specific intent required for the crime of harassment of public servant. *See* TEX. PENAL CODE ANN. § 22.11(a). When reviewing the legal sufficiency of the evidence, the Court must view the evidence in the light most favorable to the verdict to determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

In contrast, when conducting a factual sufficiency review, we view the evidence in a neutral light. *Lancon v. State,* 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The Court may find evidence to be factually insufficient in one of two ways: (1) when the evidence supporting the verdict, though legally sufficient, is so weak that the verdict seems clearly wrong and manifestly unjust, and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.; Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007).

4

## III. ANALYSIS

### A. Legal Sufficiency

Wyatt argues that the jury came to conclusions based solely on mere speculation. He argues that the evidence is not sufficient to show that while confined in McConnell Unit Correctional Facility, he possessed the specific intent required under the statute. Conversely, the State argues that the jury was permitted to infer intent and that direct evidence of intent is not required. We agree with the State.

Texas Penal Code section 22.11, as it existed at the time, provides:

> (a)    A person commits an offense if the person, while imprisoned or confined in a correctional or detention facility and with intent to harass, alarm, or annoy another person, causes the other person to contact the blood, seminal fluid, vaginal fluid, saliva, urine, or feces of the actor or any other person.

TEX. PENAL CODE ANN. § 22.11(a). It requires that a defendant intend to "harass, alarm, or annoy" a person by causing contact with bodily fluids. *Id.*

The cases interpreting section 22.11 have not specifically defined the parameters of the intent requirement. Section 6.03 of the penal code, however, explains that a person "acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03 (Vernon 2003). Section 22.11 is a "result oriented" crime—in other words, the statute focuses on the results of the conduct and not the conduct itself, in that it does not criminalize the method of causing contact with bodily fluid and the concurrent harassment, alarm, or annoyance required by the statute. *See Herrera v. State*, 915 S.W.2d 94, 97-98 (Tex. App.–San Antonio 1996, no pet.). Thus, the

5

statute's culpable mental state requirement—intent—applies to the results of the conduct. *See Washington v. State*, 930 S.W.2d 695, 699 (Tex. App.–El Paso 1996, no pet.). In other words, the State was required to prove that Wyatt (1) intended to cause urine to contact Martinez, and (2) intended to harass, alarm, or annoy Martinez.

Generally, intent may be proven by direct evidence, or it may be inferred from the acts, words, and the conduct of an appellant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Sanders*, 2006 WL 23249, at *1-2. Juries are permitted to make reasonable inferences from the evidence presented, and circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, as long as the individual inference is supported factually*. Hooper*, 214 S.W.3d at 14-15. Furthermore, in a legal sufficiency review, "each fact need not directly and independently point to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* at 13 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); *Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987)).

*Hooper* is particularly instructive on this point. In *Hooper*, two assailants tied a store clerk in duct tape and robbed her. *Id.* at 12. They then met up with Hooper, the driver of the getaway car. *Id*. A game warden, upon receiving a tip about a speeding red truck, chased the accelerating vehicle and noticed two passengers in the backseat. *Id*. Hooper stopped the truck and surrendered, but the two passengers fled on foot and fired a gunshot in the direction of the game warden. *Id*. The passengers, their guns, the duct tape, and the keys to the store were later recovered, and Hooper, as a co-conspirator, was convicted

6

of aggravated assault of a public servant. *Id*. at 13. On appeal, the court of appeals held that the evidence was legally insufficient because there was "no direct evidence to establish Hooper's knowledge of [the shooter's] . . . intent." *Id.* at 14. The court of criminal appeals reversed, however, finding that even absent direct evidence, the jury was "permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Id.* at 15.

The inference of intent made by the jury in this case is supported factually. Wyatt knew that Officer Martinez was standing directly outside his cell because Officer Martinez had just ordered Wyatt to place his hands through the slot so he could be handcuffed. Officer Teresa Chavarria testified to seeing Wyatt holding a Styrofoam cup filled with "some liquid substance." Officer Chavarria saw appellant extend his arm through the slot with a Styrofoam cup and throw some substance onto Officer Martinez. Also, Officer Martinez clearly saw the substance that Wyatt threw make contact with his pant leg, and the substance left a stain on Martinez's pants. Although neither officer immediately identified the urine inside the cup, McElhaney testified that scientific analysis concluded that the substance was in fact urine. Officer Martinez stated he was fearful of all the diseases that are spread throughout the prison. Officer Martinez also testified that he "was alarmed [by] just the fact [of having urine thrown on himself] . . . ."

Considering all these facts collectively, a reasonable jury could infer that, at the time Wyatt reached for the Styrofoam cup and threw the substance, he possessed the requisite intent to cause the urine to contact Officer Martinez and to harass, alarm or annoy Officer

7

Martinez.[3]  Wyatt's first issue is overruled.

## B.     Factual Sufficiency

Wyatt next argues that the evidence of intent is so weak that it renders the verdict obviously incorrect and strikingly unjust.  *See Lancon*, 253 S.W.3d at 705; *Roberts,* 220 S.W.3d at 524.  The testimony of Officers Martinez and Chavarria, coupled with McElhaney's analysis, is sufficient to prevent us from describing the verdict as "obviously incorrect."

Moreover, the evidence in Wyatt's defense is not so overwhelming that it renders the verdict clearly wrong and manifestly unjust.  *See Roberts*, 220 S.W.3d at 524.  At trial, Wyatt's counsel surmised that Officer Martinez urinated on his own leg, thus making him responsible for the urine on his trousers.  Wyatt also argued that urea is found in substances other than urine, and it is possible that the substance is lotion or some other substance used by Officer Martinez.  "The trier of fact is the sole judge of the weight and credibility of the evidence."  *Grotti v. State*, 209 S.W.3d 747, 758 (Tex. App.–Fort Worth 2007, pet. granted) (citing TEX. CODE CRIM. PROC. ANN. § 38.04 (Vernon 1979)).  "Appellate courts should afford almost complete deference to a jury decision when that decision is based on an evaluation of credibility."  *Lancon*, 253 S.W.3d at 705.

---

[3]Several courts, in unpublished memorandum opinions, have held that showing that a defendant knew that the bodily fluid would contact an officer, coupled with testimony from the victim that the victim felt assaulted, harassed, or annoyed, was sufficient evidence to allow an inference of intent to assault, harass, or alarm the person. *See Rials v. State,* No. 12-06-0262-CR, 2007 WL 1868520, at *2 (Tex. App.–Tyler June 29, 2007, no pet.) (mem. op.) (holding evidence was sufficient to support conviction where evidence showed that defendant spat milk directly at officer and officer was "bothered" by defendant's actions); *see also Sanders v. State*, No. 06-05-00104-CR, 2006 WL 23249, at *1-2 (Tex. App.–Texarkana Jan. 5, 2006, pet. ref'd) (mem. op.) (holding evidence was sufficient where defendant knew that feces would likely contact an officer); *cf. Wheatley v. State,* No. 10-02-00286-CR, 2004 WL 1418632, at *1 (Tex. App.–Waco June 23, 2004, no pet.) (mem. op) ("A person's immediate reaction to an event can be circumstantial evidence of the defendant's intent to harass, alarm, and annoy that person; thus, it can be relevant.").

There is nothing in the record that supports Wyatt's theory; essentially, the theory merely raised a possibility that Officer Martinez was being untruthful. However, the jury was entitled to believe Officer Martinez, and we defer to its determination of Officer Martinez's credibility. *Id.* Officer Martinez's testimony was not so weak as to undermine our confidence in the verdict, nor is there overwhelming evidence to the contrary. Accordingly, Wyatt's second issue is overruled.

## IV. Conclusion

For the reasons stated above, we overrule Wyatt's issues and affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum Opinion on rehearing delivered
and filed this the 23rd day of October, 2008.